So I'll call the case of Monique Russell et al. v. the Educational Commission for Foreign Medical Graduates, docket number 20-2128. Mr. Peterson. Thank you, Your Honor. Good morning. William Peterson on behalf of the Educational Commission for Foreign Medical Graduates. I'd like to request three minutes for rebuttal. Sure. Thank you. There are three independent grounds to reverse the class certification order, each corresponding to a different section of Rule 23. First, under Rule 23a, there are the errors with respect to typicality and adequacy. Second, there's the failure to make any finding with respect to Rule 23b. And third is the abuse of discretion in applying the Gates factors to conclude that class certification is appropriate under Rule 23c-4. You start first with typicality and adequacy. There is no finding by the district court that the alleged injuries suffered by the named plaintiffs, that is, emotional distress on learning that the licensed and board-certified doctor who treated them pleaded guilty to misuse of a social security number, are typical injuries of the class. And recall that this class includes all patients who were treated or even examined by Dr. Okoda in any way. But if we're talking, though, about a class that's just for duty and breach, why does the injury have to be typical? Wouldn't it just be the duty that was breached that would have to be typical? Because we're not talking about causation and damages here. Well, Your Honor, Rule 23a doesn't refer to the issues that are certified for class treatment. Rule 23a requires that the claims or defenses of the representative parties are typical of the claims and defenses of the class. So if there's no typicality of the injury, there is no typical claim whatsoever among the unnamed class members. So was the district court wrong when it concluded that the claims arise from the same legal theory? That's insufficient. He was correct to say that the claims arise from the same legal theory. Wrong to conclude. And from the same course of conduct. He also concluded that it came from the same course of conduct, right? Yes, Your Honor, that's correct. That was correct. Yes, but injury as well is a requirement for typicality. Why, though? Why, at least when it says claims or defenses, an ordinarily injury would be in there when we're talking about a class as to the entire claim. But when we're talking about issue classes, why shouldn't it just be the portion of the claim, the relevant portion of the claim that has to be typical? Rule 23a goes to whether a class at a high level is appropriate at all, whether the class certification device should be used. And the problem is if the other unnamed class members don't have any interest in these were the only individuals who suffered any emotional distress and none of the other class members suffered any emotional distress on learning this information at all, there would be absolutely no need to use the class action device. OK, but that's not what we're talking about here. Well, there's no proof. I mean, at the end of the day, Rule 23a has to be satisfied by a preponderance of the evidence. And if you look at where the plaintiffs attempted to show typicality, you'll see Joint Appendix 188, Joint Appendix 1350. They do not cite to any evidence in the record in their typicality analysis, and there are no findings by the district court related to typicality. But let me turn to adequacy, because even if you accept the theory that emotional distress is a typical reaction to learning this information, it creates the issue that we highlighted, which is that if under their theory, certifying the class and providing this information to class members would in fact cause currently uninjured class members to suffer an injury as a result of the class certification. Individuals who do not currently suffer from emotional distress would at that point in time be suffering from emotional distress going forward. We see that as a fundamental conflict between the named plaintiffs and the unnamed class members. How is that a conflict? How are the interests of the four named plaintiffs different? Or in conflict with any potential claim members? Because what the named plaintiffs are asking the court to do is inflict an injury. No, the injury could well come from the actual misconduct. You can't then blame it on the revelation of the misconduct. You're shooting the messenger. Well, you could be, but the question is, you have someone who right now is happily living their life. They are suffering from no emotional... Okay, so the argument is we should let you run out the statute of limitations and then say it's too late by the time they discover it. Well, actually, Judge Bibas, the statute of limitations is a fascinating point here because under plaintiff's theory, the way they are getting around the statute of limitations is to say that limitations begins when you learn the information. So under their theory of the case, you don't look at the limitations from the time of treatment. They say there is no injury. They say there is no limitations accrual until you actually learn this information and begin to suffer an emotional distress. Would you stipulate to that? I would not stipulate to that. Ah, then they can't rely on that. But that is my friend's theory. That's the theory that the plaintiffs are proceeding on. And that's a theory that it's appropriate to hold them to the adequacy determinations. And right or wrong, this is an argument that we made to the district court below. And it's an analysis that wasn't performed in the class certification. Come back to the conflict issue. How are they adverse to one another? How are the interests of the named plaintiffs adverse or in conflict with the interests of yet to be named plaintiffs? The conflict as we see it is that the named plaintiffs have said, in our view, sharing this information with the class will cause the class members emotional distress. That is their theory. Learn the information. You go from not being injured to being injured. You move from not suffering any emotional distress to suffering emotional distress. And the named plaintiffs are saying, we would like the district court to send notification to the class to provide them this information and for them to not suffer an injury. Now, look, to be clear, it's not perfectly clear to me whether this fits into the adequacy or typicality bar. It appears to be a novel circumstance. We have not identified any case previously in which class counsel was saying, we would like to represent a group of uninjured plaintiffs and we think you should then inflict emotional distress on them so that we can then recover. You don't have any authority for your proposition. You don't have any authority that says that keeping people in the dark prevents them from being injured. No, Your Honor, I don't. And I'll admit, though, that I think it's a difficult question, but I think it's a question that needed to be wrestled with and addressed as part of the classification analysis. OK, well, then shouldn't the scales be tipped by the fact that you won't stipulate that there's no statute of limitations problem here. And so we should err on the side of at least giving them the choice and empowering them because Rule 23 favors letting the party decide to opt in or opt out. The problem, as I see it, is that the uninjured party, it's not a question of opting in or opting out. It's a question of suffering the injury or not suffering the injury. So you want to say that the injury is really being caused by the attorneys and distract from the fact that your own client had a role in playing these injuries and a lot of people, they may be injured out there and just not know how to sue about it. Well, that's if under plaintiff's theory, they have not been injured until they learn the information. OK, they could amend that. I mean, fine, we can we can agree to disagree on that. Before we leave Rule 23, I forgot to ask on typicality. Didn't you forfeit to pick typicality issue below? You didn't preserve this. No, Your Honor, we certainly. OK, give me a citation as to where you preserve this issue. Where did you raise it below? Joint Appendix Page 734. OK, I look Joint Appendix 732 to 33 don't really seem to discuss this. I have a look at 734. Does the record show does the record show how many putative class members have not yet learned about this conduct so we can better assess? It's not perfectly clear, Your Honor. It's not perfectly clear how many putative class members there are. Recall, of course, it's examined in any way, and it's difficult to know exactly how many class members there will be. There appears to be some indication that hundreds of class members have been informed of this. But with the court's permission, let me turn to Rule 23B. Please. Thank you. As Rule 23's text requires, and as the case is interpreting it plain, class certification requires satisfaction of one of the prongs of Rule 23B in addition to satisfaction of Rule 23A. Here, the district court did not make any findings on any of the prongs of Rule 23B. Instead, look to 23A and then to the Gates factors. Is that required? Is analysis of 23B required under Gates and under the majority view these days? Yes, Your Honor. And to be clear. And what case supports that? Other than the Fifth Circuit footnote from 96, what do you have? I would point you, for example, to Martin versus Bear Dayton thermal products. And that's a case where the Supreme Court denied cert on this issue, right? It is a case. And I think it's a case that my friend champions. And that's a case where it does accept the idea that you can certify under 23C4 without proceeding to look at predominance and superiority, or I'm sorry, without looking at predominance with respect to the non-certified issues. However, it nonetheless implies a robust test for predominance looking at whether these are truly separate issues or not. And it actually says you do need to look at superiority with respect to the claims as a whole, explaining that superiority functions as a backdrop against inefficient certification. There is no court that I'm aware of that says you can disregard Rule 23B as a part of certification. Now, Gates is a difficult case, and it's difficult to understand. I'll certainly admit that. I think there are several ways of reading it, and we've tried to set out a couple of them in the brief. I think the most that you can read Gates for is the proposition that those factors are a way of determining the predominance requirements of Rule 23B. But I don't think you can read the text of Gates and say those factors are also a substitute for the superiority requirements of Rule 23B. Now, in our view, we think that's wrong. We do think you need to take those Gates factors and not simply look at them in isolation. But even if you're going to consider them, proceed to use them to make the required superiority finding of Rule 23B, I'm sorry, the required predominance finding of Rule 23B-3, and to make the separate superiority finding of Rule 23B with respect to the claims as a whole. Let me turn briefly, though, I'd like to turn back to the interaction of 23B and C-4. I know I'm pressed for time, and just briefly touch on the application of the Gates factors in this case, which may be the easiest way of resolving it. We detailed the variations in state law in the briefing. We think the district court heard and concluded Pennsylvania law could apply. And with respect to the variations in state law, it's not enough to say each of these states has duty as an element of negligent infliction of emotional distress. This is a novel claim attempting to create broad new duties. If you're going to say the state law is the same, you have to do more than simply say they all have duty as an element. You would have to show that every state would impose the same sweeping duty on credentialing organizations. With respect to the type of claim at issue, to point out emotional distress is not a claim where you can bifurcate damages and liability. What my friend is going to say is that the emotional distress is solely due to treatment by Dr. Okoda. That's not the case, though. And I point you to Ms. Russell's deposition testimony on joint appendix page 403, because what she says there is it's not just feeling violated by treatment by Dr. Okoda, but it's feeling violated by the institutions that allowed her to be treated by Dr. Okoda. She's feeling violated that, in her view, she thinks ECFMG is a government organization that performs background checks. But in her view, it's the institutions that were supposed to protect her from Dr. Okoda that failed. So her alleged emotional distress really is traced to her view of ECFMG's actions, not just the fact that she was treated by Dr. Okoda. And in analyzing that emotional distress, you need to look at all the circumstances leading up to it. Again, we argued this. We argued it's fenced to the district court. It wasn't considered. With the efficiencies, as we pointed out, virtually all of the information presented in any commons proceedings would need to be represented in any individual proceedings. Causation, all of our affirmative offenses, the vast meat of the case is left for subsequent individual proceedings. This case really is Gates, where the plaintiffs are seeking to certify narrow, abstract questions of duty and breach while leaving the vast bulk of the case for subsequent treatment in individual proceedings. Thank you, counsel. I mean, I don't mean to cut you off. Do you want to finish up here? No, thank you. With respect to Rule 23B and C4, and I'm sorry, Your Honor, I believe I'm into my rebuttal time. No, go ahead. Go ahead. Thank you. I just encourage the court to look at the advisory committee notes in 1966 to Rule 23 with respect to Rule 23B3 and 23C4. Both of them use the same example, a fraud claim in which liability issues are suitable for common treatment and damages are individualized. And what Rule 23B's comments say is that is an example in which the common liability issues predominate over the individualized damage questions. That's the same example called back to in Rule 23C4, not as a way of evading the predominance test, but pointing out the predominance test is satisfied. The circuits that have gone astray, the Second Circuit in the Nassau decision, the Sixth Circuit in its Baird decision, have both misread the advisory committee notes to 23C4, suggesting that fraud example is an example of evading the predominance requirements in 23B3, not correctly recognizing it as an example in which the predominance requirements are satisfied. Thank you, counsel. We'll get you back up here and rebuttal shortly. Mr. Thornson. Thank you, Judge Estrepo. May it please the court. Patrick Thornson on behalf of my class. The district court acted within its broad discretion in certifying the negligence elements of duty and breach, which are indisputably common to all class members. A single course of conduct in one state by the sole defendant gave rise to claims of one type of class-wide harm under one legal theory. Let me back you up to the Gates factors, all right? Sure. Did the district court do a robust enough analysis, so to speak, of the Gates factors? Yes, Your Honor. There are two factors that my colleague indicated were not addressed in the district court's opinion in the reply brief. The type of claims and issues in question, that's addressed throughout the district court's opinion. The district court performed a very careful and discriminating analysis in determining whether, for example, the entire issue of liability could be certified versus certain elements of negligence in this case. And that's on pages Joint Appendix 45 and 56 and onward. The second is whether the substantive law separates the issues from other issues concerning liability or remedy. If you look at the ALI principles on which the Gates factors were modeled, the question there is whether essentially the district court can appropriately carp at the joint and find issues that can be efficiently and appropriately isolated for common treatment of common resolution while leaving the remaining issues for individual resolution. So you see consideration of that issue at 56 and 59 through 62. Sorry, Mr. Bemis, go ahead. Judge Bemis, go ahead. Sorry, we should get back to efficiencies. But I do want to ask about a couple factors that your friend doesn't focus on. I didn't see expressed discussion of number two, overall complexity, number six, potential effect, or number seven, repercussions of certification on resolution or remaining issues. Do you see that in the record? In terms of the overall complexity of the case, I think that, I mean, the district court accurately describes what the case is about, what the claims are. It talks about that individual, these individual elements of negligence can be isolated for proceedings will involve in terms of the resolution of individual claims. I think that's inherent in the entire discussion, Judge Bemis. In terms of the potential preclusive effect on joint appendix 60 through 61, the court, for example, discusses whether non-mutual collateral estoppel could be sufficient and determines that class treatment, it determines that it can't be, that it won't be because it will generate inconsistent outcomes. And if you see ECFMG prevails in one trial, they can't use that result against another plaintiff and that the preclusive effect of a class determination of these issues. And how about the repercussions on other remaining issues? I see that discussed on 60 through 61, which is, again, discussion preclusion. And also on 61, the individual proceedings that will remain, which will focus on causation and damages, need not impact each other. So to the district court, considering that there. Maybe you considered it, but let's talk about that in the light of efficiency. So let's assume you prevail down the line on duty and breach. Now you're at a damages phase of this proceeding. What's that going to look like? What it will look like, Your Honor, is a series of many trials. Like 700, maybe, many trials? Well, likely not. I think how the district court, obviously, it would be up to the district court's discretion and judgment in terms of how the class proceeding hands out and what the case looks like at that stage. Even if you had maybe. Like a mass tort case. Even if you had just a handful of many trials, you would still have to present evidence. Damages is tethered to duties and breach, right? And causation. Here, what you would avoid by using the class device is repetitive, expensive presentation of expert testimony on the standard of care. So the parties have identified approximately 15 experts, and the majority of them pertain to standard of care. And in resolving issues of duty and breach, you don't have to present that evidence repeatedly. Fly experts in from all over the country present them at 700 individual trials. We represent 550 claimants. I think there's evidence in the record that there are about 720 who were treated at Prince George's Hospital Center, at the very least. So you have some kind of limited presentation of the evidence that will, of the factual record that could be through answers to special interrogatories that are submitted at the class proceeding. It could be through stipulation entered into by the parties. It could be through a presentation of witness testimony that would allow the jury to develop an understanding of what occurred. And, but again, no expert testimony on liability. And then you have testimony of the plaintiff. You have testimony of perhaps one or two fact witnesses, physician, or someone who's evaluated the plaintiff to testify as to the nature of the impact. So causation and damages would be resolved in those individual proceedings. And most likely, Your Honor, like most MDLs resolve, they don't resolve 700 individual cases. After litigating the number of these, eventually the parties are able to facilitate settlement and it facilitates an appropriate valuation of the case. To turn briefly to the Gates factors, because we were on that immediately beforehand, the means by which predominance and superiority are resolved in the context of an issue class certification. What the ALI principles did and what the district, what the, this court adopted is a means of determining with precision, the considerations that are involved in the interplay between B3 and C4. So for example, section 2.02, comment A indicates the section as a whole, not just the phrase material advance delineates the multifaceted inquiries presently encapsulated under the predominance concept. The reporter's notes indicates the objective of these factors is to assist both courts and lawyers by identifying with greater precision, the considerations reflected in the interplay between subsections B3 and C4 as set forth in existing case law. What the Gates factors don't contemplate is that the court go through a detailed analysis of the Gates factors as pertaining to the issue class, and then back up and do an evaluation of B3 as it pertains to the entire claim. That's not in the text of Gates and it doesn't make sense in terms of the text and structure of rule 23 described in the brief. What about doing it? What about doing it in the other order? Start with A and then do B, especially B3. And then if you can't satisfy predominance and superior under B3, you don't get to C4. Instead of doing C4 and then backing up to B, why not do B3? And then if it's satisfied, go to C4. That was a, Judge Porter, that was a path that the district court, that the circuit court considered, but then rejected in Gates. The court considered B3 and then went on to the consideration of whether the class satisfied C4. If B3 certification were required for the entire claim before considering C4, this court would not have had to go on to C4. And the reason is that that avoids, I think that mode of operating would  It would have to be a little bit different in terms of the efficiencies that are presented by the class device. I mean, here you have issues of duty and breach that involve the conduct of one defendant in one state, a single course of conduct that are indisputably common to all class members. And it's appropriate to give the district under rule 23 and under general principles of case management to give district courts the tool to isolate those issues for common treatment and for common resolution. And that's exactly what the ALI principle. So Gates really left this issue open. It didn't really decide either way, you know, and the Fifth Circuit viewed C4 as just, okay, if you've satisfied A and B, it might be a little cleaner to let the court do it this way. Why shouldn't we follow the Fifth Circuit's approach and not allow C4 to, you know, if a class doesn't satisfy B3, then C4 is not going to broaden it or allow it in, you know, if B3 is only partially satisfied. Judge Bevis, I think I disagree with the idea that Gates didn't resolve that question. I mean, this court expressly considered his ban out. I understand that argument, but let's assume that Gates leaves the issue open. Should we favor the majority side of the circuit split as opposed to the Fifth Circuit's approach? First of all, all the rest of the circuits who've considered the issue have come into alignment on the question, have rejected Castano. Even the Fifth Circuit has moved away from Castano. Moreover, if the entire case can be satisfied as to B3, there's no reason to then consider whether the discrete issue within that case needs to be satisfied. So C4 would be superfluous. Exactly, exactly. That's precisely the concern that the Fourth Circuit identified in Gunnels. I would disagree, too, with my colleague's characterization of the Gates factors as not addressing superiority. The Gates factors expressly consider whether the proceeding can be efficiently resolved. And if you look at section 2.02 of the ALI principles, it discusses, I can quote from it for you directly. It asks district courts to consider whether issue certification will materially advance the resolution of multiple civil claims by addressing the core of the dispute in a manner superior to other realistic procedural alternatives. That tracks the superiority requirement. I'm going to ask you to talk about choice of law a little. Your friend spent some time on this. And I want you both to talk about the substance of why choice of law is appropriate and also the record the district court made on choice of law. Is it so clear that Pennsylvania law applies? And does the district court say enough about Maryland and D.C. law such that it has a record to justify why it thought Pennsylvania law is the one that governs here? We believe so. Judge Bevis, we believe the district court did sufficiently consider the issue, did thoughtfully consider whether the laws of these different states materially differ in a way that would impact manageability in certifying these issues for class-wide treatment. I mean, the real options are that Pennsylvania law applies to all claims or that D.C. and and in neither instance is class certification impaired. I mean, at the at the worst, worst case scenario, you have different classes certified depending on where the where the. But make the arguments because your friend says, OK, Maryland law in particular doesn't have this separate tort and the person was injured in Maryland. And so you're going to be in a morass about which which tort we're talking about here. So, you know, what's the case that it really is Pennsylvania law that governs and what's the case that even if it isn't Pennsylvania law that governs that it just it really doesn't matter which law governs. So the taking the second point first, there's no dispute as to the negligence cause of action. So my colleague doesn't make any contention that somehow the the laws of these different states and districts are materially different on negligence. The question is to negligent inflection of emotional distress. The district court appropriately concluded that there was no functional difference between certainly there's no difference between D.C. and Pennsylvania. There's no issue raised by my colleague there. And there's no real functional difference between those two jurisdictions and Pennsylvania and Maryland, because Maryland permits the recovery of of emotional distress damages in a negligence cause of action without impact. Have you done a 50 state survey? I'm just kind of curious when this issue case goes on to other people who've moved elsewhere, like how widespread these approaches are. The approach to negligent inflection. How about having a separate negligent inflection tort or having the functional equivalent folded inside negligence? I have not done a 50 state survey of that. All right, so then let's assume that he has something to the point that Maryland's difference matters. How clear is it that Pennsylvania law really ought to govern all of these? I think he's pushed that point. Because what's my colleague focuses the choice of law question on conduct that is really not part of this this aspect of the case and not relevant to the parties who are actually in the case. This case is about E.C.F.M.G.'s conduct in Pennsylvania. E.C.F.M.G. is a Pennsylvania corporation. It's not about what ACOTA did. It's not about what other state medical boards did for the purpose of determining choice of law. It's really about what a Pennsylvania corporate citizen did. And it would be a strange outcome to have the application of Pennsylvania tort law to regulate the conduct of a Pennsylvania corporation depend on the fortuitous location of a plaintiff at that time. The particular plaintiff happened to be injured. And so I think the district court appropriately determined that really Pennsylvania had the most substantial relationship to the dispute and therefore Pennsylvania law should govern. And the analysis is sound there. Could you touch on counsel's argument with respect to this conflict of interest? Certainly. First of all, as Judge Estrepo made reference to, only a fundamental conflict of interest can defeat adequacy. The district court made this finding at page 20 of its opinion, citing Dewey versus Volkswagen. My colleague doesn't contest this. And what a fundamental conflict of interest means is that some members of the class benefited while other members were harmed by the relevant conduct. Here, the district court appropriately found that no one benefited from the conduct. And so there's no real basis that my colleague identifies to deem the district courts who have clearly erred in this finding. There's no argument that the district court misapplied circuit precedent or Supreme Court precedent. There's no argument that somehow my colleague's speculative argument about the potential impact of this notice upon individuals, that that is contained in a precedent that was misapplied. The important thing, too, for the court to recognize is that this argument does not apply to the over 500 individuals who are already represented. So these are individuals who already are aware of the claim and are already signed up and they're in the record. And so the adequacy argument does not apply to them. Moreover, it's important to recognize that plaintiffs don't seek to inflict emotional injury on anyone. They seek to vindicate their rights and the rights of the class members. And in any event, if there is such a person out there who, despite the widespread media coverage of this case, were to determine that, were to be emotionally distressed by receiving notice of this and didn't know about it beforehand, ECFMG, under our theory, is the cause of that emotional distress. The court or the mailman or class counsel are just the messenger for that. I mean, we don't cut off ECFMG as approximate cause of that emotional distress. So it's important to distinguish between the cause of injury and the means by which that injury comes to light for an individual plaintiff. Touching briefly on typicality, Your Honor, there are a number of hurdles to overcome, I believe, for this court to find in favor of my colleague on typicality. First is the discussion in Newton v. Merrill Lynch. It's a case that's cited on page 23 of ECFMG's brief. And as to typicality, Judge Skirica articulated, the criterion acts as a bar to class certification only when the legal theories of the named representatives potentially conflict with those of the absentees. If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences. We believe that language is dispositive here. Also, the court's language in the NFL concussion cases, the typicality is a low threshold. And in that case, only 28% of the class members were expected to suffer any injury. And that was no barrier to class certification for some. So that's typicality. Now talk about this adequacy argument that the notice itself is going to traumatize your clients. Certainly. There we find that, first of all, as I was mentioning to Judge Estropa, that a fundamental conflict of interest is required in order for adequacy to be impaired, which is some individuals benefited and other individuals were harmed. And there's no contention that that's the case here by appellant. And there's no challenge to that particular test or any kind of argument that that test doesn't apply. The district court made that findings explicitly. So we believe that the district court's finding on adequacy is sound. Again, it doesn't apply to the individuals who are already represented, who are over 500 in number. And ECF&G is the cause of class members' injuries. I mean, the cause in two respects. First, that it was the... Sorry, let me back up for a second. In that scenario, let's assume there is someone out there who did not know about this issue and finds out through some kind of court-approved notice that would reflect the district court's consideration of this matter and the potential impact upon plaintiffs of receiving it. ECF&G is the cause of whatever distress occurs. It's just, it would be as strange to argue that somehow the mail carrier or the court were the cause of emotional distress in that scenario as it would be to argue that somehow the news media is the cause of an individual's distress for the rest of the plaintiffs. And that somehow there's an action against them. So again, it's important to distinguish between the cause of the injury and the means by which the injury comes to light. The court and class counsel would be merely the messenger under that scenario. And I think in pointing out that... This is one final point. We think that Gates is sound. We don't seek any modification to Gates contrary to my colleague's contention in its brief we don't believe that Gates to be overruled and modified in any way. We do believe that Rule 23 is transubstantive and that meaning that the mere fact that a party's claiming emotional distress doesn't mean that the class certification is precluded. You can see that in the Gunnels case where emotional distress was one of the claims and the Fourth Circuit nonetheless certified issues classes there. So we're just merely saying that Gates and Rule 23 don't contemplate that emotional harm can be rejected alone. Does it matter that in a negligence action for emotional distress damages cannot be bifurcated from liability? I don't think that's universally the rule, Your Honor. I think that in this particular case, we're facing a different scenario where in an ordinary negligence case, you're talking about the personal interaction between the plaintiff and the defendant and you need to develop a factual record to determine the effect of defendant's actions on the plaintiff. Here, there's no direct interaction between the plaintiff and the defendant. The defendant's conduct can be isolated. It's a common course of conduct and can be addressed on a common basis without any issue of having emotional distress be addressed separately because the emotional distress arises out of the interactions with ACOTA. Again, there's no Dr. ACOTA. Let's be clear. There's a Mr. Igbarrasi. There's no medically licensed individual named ACOTA, doesn't have a board certification, doesn't have a medical license. License was stripped for committing a crime of moral turpitude. But the emotional distress arises out of that interaction and separately for plaintiffs finding out about the ECFMG's conduct and ACOTA Igbarrasi's true identity. So we believe that there's a separation there that permits these issues to be resolved separately. Thank you very much. I'm sorry. I didn't mean to cut you off. Anything else you want to add for us? Nothing else. Thank you, Judge Restrepo. Take care. Mr. Peterson. Thank you, Your Honor. A few points in rebuttal. First, what you heard from my friend during his argument is the first time that the plaintiffs have put together any kind of concrete trial plan as to how this case will actually be tried. Now, we think that's wrong, but more significantly, that's the sort of thing that should have been done during oral argument on appeal. The fact that we are disputing right now what evidence would need to be presented in each proceeding, what issues would need to be decided in each proceeding, is essentially confirmation that the district court didn't rigorously analyze how this case would actually be tried below. And although I can understand why my friend would want to try the case that way, but there's no answer to causation in his trial plan. There's no answer to when and which jury would actually look at ECFMG's conduct compared to all of the other numerous causes of the alleged emotional injuries suffered by plaintiffs and decide whether ECFMG was actually the proximate cause of anyone's injuries. Second, there were references to the majority of the circuit split. Judge Bebas, I do want to suggest I think the circuit split may have been unsettled somewhat by the Supreme Court's Comcast decision in 2013. If you look at the wake of Comcast and what some of the circuits did, in particular the Seventh Circuit on remand and Butler versus Sears Roebuck and Company, that was a remand from the Supreme Court. A common liability class and individual damage issues under Rule 23C4 went back down to the Seventh Circuit. The Seventh Circuit didn't say, because this is a 23C4 class, we can look at predominance just focused on the common liability issues. The Seventh Circuit looked at it and said, well, we need to look at predominance comparing the common liability issues against the individual damages issues and correctly determined, even in a 23C4 class, that those issues predominated. But it still made that comparison. What do you say to your friend's argument that if you do it in that order, you render a C4 superfluous? Well, I say his argument renders 23B3 superfluous. I know. So I actually disagree. And I think the Fourth Circuit went astray in Dunn's when it suggested you should just, the alternative is to ignore C4 as you proceed through the B3 analysis. And Judge Porter, respectfully, I do think C4 and the availability of the power under C4 is important in a 23B3 class action. You need to know which issues the court is being asked to give class treatment to and what will actually be tried on a classified basis as opposed to individually any time you're proceeding through the superiority and predominance analysis of B3. So far from rendering 23C4 a dead letter, in our view, Rule 23C4 is used and is important every time you have a class action in which not all of the issues are being given class-wide treatment, which is a relatively common occurrence, albeit often implicitly rather than explicitly under 23C4. Third, with respect to choice of law, as I think my friend indicated, the only real relationship that Pennsylvania has to this lawsuit is the fact that ECFMG is located there. The ECFMG's communications were with out-of-state entities. About ECFMG's communications to hospitals located out-of-state, ECFMG's communications located to medical boards out-of-state. The location of the defendant tends to be the least significant factor in a choice of law analysis. And again, what's critical here is not just that at a high level, the tort is recognized, not just that at a high level, say, these states recognize the cause of action for negligence. What matters is whether these states would actually recognize the duty that plaintiffs are seeking to impose. These are novel claims. This is an extraordinarily broad duty. A suggestion that ECFMG owes any kind of duty at all to any kind of patient treated by any foreign medical graduate is a broad, expansive proposition, and it's one that would need to be tested and questioned under the law of each of these states. Fourth, with respect to the adequacy discussion and the conflict, my friend talked about it as the injury coming to light, and I think that's not a framing that we agree with. It's not about an injury coming to light. It's about not suffering an injury. This is not the usual case in which there is a plaintiff who has suffered a physical or pecuniary injury or even an emotional injury, walks into a lawyer's office, finds out about it, and then walks out being represented. This is a case in which there are class members who have suffered no injury at all, who don't even know that they were ever examined by Dr. Okoda, who are happily living their lives and who will continue happily living their lives, not with no injury that has come to light, but with no injury whatsoever. And under my friend's theory, they suffer that injury and they suffer compensable emotional distress, which is not a small thing, upon being notified of the class. Again, this is novel. I don't think either party has found a case which involves this, but I do think it's a serious consideration when the plaintiff's theory is that the class certification itself will in fact cause the injury that will then allow the class members to recover. Not an injury coming to light, but an injury actually occurring. It's not about causation. It's not about whether UCF is legally responsible for it, although we certainly think it's not, but it's about the fact that there is no injury, pre-certification, and then there is an injury post-certification. And Your Honor, if I can close just on one point. Sure. It is a question of causation and it's a question of whether these claims can be severed in the manner suggested by the district court. The ECFMG needs to be able to present its defenses. Class certification cannot be used to deprive a defendant of the right to present its case and present its arguments, including here the fact that any emotional distress traceable to ECFMG needs to be considered in light of all of the evidence of ECFMG's conduct and the causation needs to be weighed in light of all of the different actors, including ECFMG's conduct. These claims are not divisible in class certification's error. Counsel, thank you very much. I want to ask that you folks reach out to the clerk's office and make arrangements to docket the transcript and you'll split the costs of this argument. Certainly, Your Honor. Yes, Your Honor. Thanks again for working with us to reschedule this. Have a great rest of your day. Thank you, Your Honor.